UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EYLEM TOK,                          *
                                    *
            Petitioner,             *
                                    *
      and                           *
                                    *
TC,                                 *      Civil Action No. 25-CV-10649-ADB
                                    *                       24-CV-12458-ADB
            Related Petitioner,     *
                                    *
      v.                            *
                                    *
BRIAN A. KYES,                      *
                                    *
            Respondent.

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

        Petitioner Eylem Tok and her minor son T.C. seek, in related cases,[1] writs of

habeas corpus granting relief from Chief Magistrate Judge Donald L. Cabell's Order on

Relator's Extradition, Motion to Dismiss, and Motion for Release from Custody with

respect to Eylem Tok, [Tok ECF No. 16-8 (the "Tok Order")] and Order on Relator's

Extradition and on Relator's Motion to Dismiss with respect to T.C., [T.C. ECF No. 18-1

(the "T.C. Order")] (collectively, the "Orders"). The government opposes both petitions.

[Tok ECF No. 16; T.C. ECF No. 27]. For the reasons below, Petitioner Tok's petition is

**TRANSFERRED** to the United States District Court for the District of Rhode Island, and

Petitioner T.C.'s petition is **DENIED**.

_____

[1] Because there are two different dockets in this case, the Court will refer to docket
entries in 24-cv-12458 as "T.C. ECF No. X" and in 25-cv-10649 as "Tok ECF No.
X" for ease of reference.

## I.    FACTUAL BACKGROUND

Except where stated otherwise, the Court takes the following facts from the T.C.

Order.[2]

### A.  Extradition Treaty Between the United States and the Republic of Türkiye

The United States and the Republic of Türkiye ("Türkiye") have had an extradition

treaty in place since 1979 (the "Treaty").  Extradition and Mutual Assistance in Criminal

Matters Treaty, June 7, 1979, T.I.A.S. No. 9891.  In relevant part, the Treaty states:

> The Contracting Parties undertake to surrender to each other, in accordance with the provisions and conditions laid down in this Treaty, all persons who are found within the territory of the Requested Party and who are being prosecuted for or have been charged with an offense, or convicted of an offense, or are sought by the other Party for the enforcement of a judicially pronounced penalty for an offense committed within the territory of the Requesting Party.

Id. at art. 1.  Moreover, "[e]xtraditable offenses" include "[o]ffenses . . . which are

punishable under both the federal laws of the United States and the laws of [Türkiye] by

deprivation of liberty at least for a period exceeding one year or by a more severe

penalty."  Id. at art. 2.  The request

> relating to a person being prosecuted or who is charged with an offense . . . shall be accompanied by . . .
>
> (a) A warrant of arrest issued by a judge or other competent judicial officer;
>
> (b) A statement of the facts of the case;
>
> (c) Such evidence as, according to the laws of the Requested Party, would justify arrest and committal for trial of the person sought if the offense had been committed in the territory of the Requested Party;

---

[2] The Court must defer to the factual findings of the Magistrate Judge unless they are clearly erroneous.  See In re Extradition of Howard, 996 F.2d 1320, 1329 & n.4 (1st Cir. 1993).

(d) Evidence proving that the person sought is the person to whom the warrant of arrest refers, including information, if available, on nationality; and

(e) The text of the applicable laws of the Requesting Party, including the law defining the offense, the law prescribing the punishment for the offense, and the law relating to the limitation of legal proceedings or the enforcement of the penalty for the offense.

Id. at art. 7 (emphasis added).

### B.  The Accident

Shortly before midnight on March 1, 2024, Petitioner T.C., driving a Porsche, entered a two-lane, two-way road with a speed limit of 30 kilometers per hour.  [T.C. Order at 5].  Petitioner T.C. was initially following his friend, who was driving a Volvo, but he "suddenly accelerated" and passed the Volvo.  [Id. at 6].  As he approached a bend in the road, he turned the corner "too quickly" and hit three ATVs parked on the side of the road and five individuals.  [Id.]  One of those individuals died.  [Id.]

At the scene of the accident, Petitioner T.C. excited the vehicle.  [T.C. Order at 6].  He contacted his mother, Petitioner Tok, and his private driver.  [Id.]  After Petitioner Tok and an emergency vehicle arrived at the scene, Petitioner T.C. got into his mother's vehicle and drove away.  [Id. at 7].  Less than three hours later, both Petitioners were seen in a photograph passing through airport security at the Istanbul airport.  [Id.].  They flew to Cairo and then to the United States.[3]  [Id.]

---

[3] The Tok Order details a number of other allegations regarding Petitioner Tok's involvement in tampering with evidence of the accident that are relevant to her extradition order.  See [Tok Order at 11–15].  Because this Court determines it lacks jurisdiction over Petitioner Tok's habeas petition, see infra, it focuses its recitation of the facts on the allegations relevant to Petitioner T.C.

C. *The Investigation*

Subsequently, the Istanbul Chief Public Prosecutor's Office began an investigation into the accident.  [T.C. Order at 7].  A few weeks after the accident, the prosecutor produced a report detailing the facts and evidence regarding Petitioner T.C.'s alleged commission of an offense under Article 85 of the Turkish Criminal Code, which prohibits "caus[ing] death of another by reckless conduct" and imposes a penalty of imprisonment for two to six years.  [Id. at 7–8, 7 n.5].  The concluding paragraph of this report requested Petitioner T.C.'s extradition "so that the investigation against [T.C.] can be concluded." [Id. at 8 (alteration in original) (quoting the prosecutor's report)].  The Magistrate Judge concluded that "throughout the prosecutor's report, the prosecutor outlined conduct by T.C. that firmly supported that he committed the offense, including engaging in reckless conduct."  [Id. at 10].

On July 3, 2024, a judge of the Istanbul 7th Criminal Judgeship of Peace issued an arrest warrant for Petitioner T.C.  [T.C. Order at 11].  The Magistrate Judge noted that:

> In the context of issuing the warrant, the judge examined "the investigation file" and noted "the existence of strong suspicion" that T.C. "committed the offence" proscribed by article 85 "and there has been reason for detention."  The warrant explicitly identifies the "Offence Charged Against the Accused" as "causing Reckless Killing and Injury" under article 85.  Further, the judge stated in the arrest warrant that, "By taking into consideration the sanctions . . . for the offence . . . , [the] upper limit of the penalty and [the] concrete evidence in the file pointing to commission of the offence by [T.C.], it has been decided to issue an arrest warrant for [T.C.] to detain him . . . ."  When arrested, and if T.C. could not be taken to the Chief Public Prosecutor's Office within 24 hours, the warrant states that the investigation prosecutor shall be contacted to take T.C.'s statement such that "interrogation will be evaluated."

[Id. at 11–12 (alterations in original) (citations omitted)].

4

## II.    PROCEDURAL HISTORY

Petitioners arrived in the United States on March 2, 2024.  [T.C. Order at 12].  On April 3, 2024, Türkiye requested Petitioner Tok's extradition via a diplomatic note.[4]  [Tok Order at 6].  In May of 2024, a magistrate judge of the United States District Court for the Southern District of Florida reviewed the complaints against Petitioners seeking their extradition.  [T.C. Order at 12; Tok Order at 7].  These complaints were filed by an assistant United States attorney and requested warrants for Petitioners' arrests.  [T.C. Order at 12; Tok Order at 7].  On June 14, 2024, Petitioners were arrested in Massachusetts.  [T.C. Order at 13; Tok Order at 7].  Petitioner Tok's extradition hearing before Chief Magistrate Judge Cabell was held on October 9, 2024.  See generally Extradition Hearing, In re Extradition of Tok, 765 F. Supp. 3d 46 (D. Mass 2025) (No. 24-mj-01365), Dkt. No. 150.  Petitioner T.C.'s extradition hearing before Chief Magistrate Judge Cabell was held on October 15, 2024.  See generally Extradition Hearing, In re Extradition of T.C., 765 F. Supp. 3d 72 (No. 24-mj-01365), Dkt. No. 151.  The Magistrate Judge ordered certification of extradition for Petitioners on February 11, 2025.  [T.C. Order at 38; Tok Order at 50].

## III.    STANDARD OF REVIEW

### A.  Entitlement to Federal Habeas Relief

Extradition orders by a magistrate judge are not subject to direct appeal.  Collins v. Miller, 252 U.S. 364, 369–70 (1920).  Instead, a district judge may review a magistrate judge's extradition decision only on a petition for a writ of habeas corpus.  Id.  This review

---

[4] The Magistrate Judge did not specify the date on which Türkiye requested Petitioner T.C.'s extradition.

"is not a means for rehearing what the magistrate already decided." Fernandez v. Phillips, 268 U.S. 311, 312 (1925).  It is instead limited to "whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." Id.  "Courts generally grant habeas review to measure whether there is sufficient probable cause supporting the alleged offenses." Ordinola v. Clark, 402 F. Supp. 2d 667, 673 (E.D. Va. 2005) (first citing Quinn v. Robinson, 783 F.2d 776, 791 (9th Cir.1986); and then citing Eain v. Wilkes, 641 F.2d 504, 520 (7th Cir.1981)), vacated on other grounds sub nom. Ordinola v. Hackman, 478 F.3d 588 (4th Cir. 2007).

    B.  *Habeas Jurisdiction*

    "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004) (alteration in original) (quoting 28 U.S.C. § 2242, and then citing 28 U.S.C. § 2243).  "[T]here is generally only one proper respondent to a given prisoner's habeas petition." Id.  Thus, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not . . . some other remote supervisory official." Id. at 435.  "[I]dentification of the party exercising legal control [of the petitioner] only comes into play when there is no immediate physical custodian with respect to the challenged custody." Id. at 439 (internal quotation marks omitted).[5]

_____

[5] The Court acknowledges that there is some disagreement about whether Padilla's immediate confinement rule applies to detention and deportation of aliens due to the language in a footnote, Padilla, 542 U.S. at 435 n.8 (explicitly leaving "open

Therefore, "[w]henever a . . . habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and [therefore must] file the petition in the district of confinement." Id. at 447.

### C.  Review of Magistrate Judge's Determination of Extradition

"The Court will apply the clearly erroneous standard in evaluating a petitioner's challenge to the Magistrate Judge's probable cause determination and review of the extradition warrant." Ordinola, 402 F. Supp. 2d at 673 (citing Garcia-Guillern v. United States, 450 F.2d 1189, 1192–93 (5th Cir.1971)).  A reviewing court "uphold[s] the judge's finding of probable cause 'if there is any competent evidence in the record to support it.'" Hoxha v. Levi, 465 F.3d 554, 560 (3d Cir. 2006) (quoting Sidali v. INS, 107 F.3d 191, 199 (3d Cir.1997)).  On the other hand, mixed questions of law and fact and pure questions of

---

the question whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation").  This disagreement, however, has been limited to immigration proceedings.  See, e.g., Farez-Espinoza v. Chertoff, 600 F. Supp. 2d 488, 493–94 (S.D.N.Y. 2009) (reasoning that "the Court expressly declined to decide whether its reasoning applied to immigration cases" (emphasis addded)); Doe v. Garland, 109 F.4th 1188, 1195 (9th Cir. 2024) ("Footnote eight in Padilla does not affect the application of the immediate custodian rule for core habeas petitions filed by immigrant detainees.").  Moreover, the First Circuit weighed in on this issue even before the Padilla decision and rejected the idea that the proper respondent could be anyone other than the warden, even in such immigration cases.  Vasquez v. Reno, 233 F.3d 688, 693 (1st Cir. 2000) ("In terms of identifying a proper custodian, there is no principled distinction between an alien held in a detention facility awaiting possible deportation and a prisoner held in a correctional facility awaiting trial or serving a sentence.").  And even were that not so, the Court has not found any authority extending that divide to extradition proceedings.  See Zhenli Ye Gon v. Holder, 825 F. Supp. 2d 278, 282–84 (D.D.C. 2011) (relying on Padilla for finding of no jurisdiction over habeas under immediate custodian rule); Skaftouros v. United States, 667 F.3d 144, 146 n.1 (2d Cir. 2011) (assuming the immediate custodian rule applied but finding it waived); Gomez v. United States, 140 F.4th 49, 49 n* (2d Cir. 2025) (assuming the immediate custodian rule applied but finding it waived).

law are reviewed de novo.  Ahmad v. Wigen, 726 F. Supp. 389, 408 (E.D.N.Y.

1989), aff'd, 910 F.2d 1063 (2d Cir. 1990).

## IV.    DISCUSSION

### A.  Jurisdiction Over Tok

As an initial matter, the government argues that this Court lacks jurisdiction over

Petitioner Tok because she is currently being held at the Wyatt Detention Facility in Rhode

Island.  [Tok ECF No. 16 at 8].  Petitioner disagrees, arguing that the Tok Order remanded

her to the custody of the U.S. Marshal for the District of Massachusetts.  [Tok ECF No. 21

at 2].  Petitioner argues that the Padilla rule is a venue rule, and it should not apply

because "the nucleus of operative facts and core legal arguments in her case are closely

related to those of another pending habeas petition in [the District of Massachusetts],

namely that of T.C., her minor U.S. citizen son."  [Id. at 3–4].

The Court finds Petitioner Tok's arguments unavailing.  Under the immediate

custodian and district of confinement rules established in Padilla, Petitioner Tok has

named the wrong respondent in this case and filed in the wrong district.  542 U.S. at 435,

447 (holding that the only one proper defendant in a habeas case is the warden holding the

petitioner, and therefore the location of the warden is where the petitioner must file).  It is

true that some courts have recognized that, as acknowledged by Justice Kennedy's

concurrence in Padilla, habeas jurisdiction is not necessarily precisely the same as subject

matter jurisdiction in this regard.  542 U.S. at 451 (Kennedy, J., concurring) (gathering

cases).  For example, some courts have found that this issue can be waived.  See, e.g.,

Skaftouros v. United States, 667 F.3d 144, 146 n.1 (2d Cir. 2011) (assuming the immediate

custodian rule applied but finding it waived); Gomez v. United States, 140 F.4th 49, 49 n*

(2d Cir. 2025) (assuming the immediate custodian rule applied but finding it waived). But even if this Court were to agree with the Second Circuit on this point,[6] the government has clearly not waived the application of the immediate custodian and district of confinement rules here. See [Tok ECF No. 16 at 8]. Thus, the prudential considerations raised by the Petitioner are insufficient to overcome the hard-and-fast mandate provided by the Supreme Court. See, e.g., Zhenli Ye Gon v. Holder, 825 F. Supp. 2d 278, 282–84 (D.D.C. 2011) (reading Padilla to mandate transfer of case to Western District of Virginia despite convenience of parties favoring District of Washington, D.C.). Petitioner raises no other exceptions to Padilla that would be applicable here.

Although the Court, for similar reasons as those for T.C. as discussed infra, is skeptical of Tok's claims for relief, it notes that Tok's arguments are much broader than T.C.'s. Moreover, "there is a rebuttable presumption in favor of transferring a [habeas] case instead of dismissing it." See Tham v. Adducci, 319 F. Supp. 3d 574, 578 (D. Mass. 2018) (citing Britell v. United States, 318 F.3d 70, 73–74 (1st Cir. 2003)). The Court therefore **GRANTS** Tok's request in the alternative to transfer her case to the United States District Court for the District of Rhode Island.

### B. Definition of "Charged"

The Court turns to T.C.'s petition. He makes only one substantive argument,[7] which is that the Magistrate Judge erred in finding that T.C. has been "charged" with a

---

[6] The Court notes that Justice Kennedy's opinion is not necessarily controlling, see Khalil v. Joyce, 771 F. Supp. 3d 268, 273 (S.D.N.Y. 2025), although it is often given "particular weight," Ozturk v. Trump, 777 F. Supp. 3d 26, 37 (D. Mass. 2025).

[7] Petitioner T.C. briefly raises that he is seeking a humanitarian challenge through the Secretary of State. [T.C. ECF No. 22 at 2]. Even if, as Petitioner T.C. argues,

criminal offense, as is required for extradition to Türkiye.  [T.C. ECF No. 22 at 5–6].  The government disagrees, arguing that the Treaty does not require Türkiye to issue formal charges for an extradition order to be effectuated.  [T.C. ECF No. 27 at 8].

### 1.  Magistrate Judge's Conclusions

The Magistrate Judge first analyzed T.C.'s arguments, which are largely the same ones made before this Court.  T.C. argued that because "he is not being prosecuted and that there is no formal or active charge against him, [and therefore] he . . . is only being investigated," he cannot be extradited because "a mere investigation falls outside the" ambit of the extradition treaty.  [T.C. Order at 19–20].

The Magistrate Judge began with the text of the Treaty.  Citing Black's Law Dictionary, he noted that "[t]he definition of the verb 'charged'" is "[t]o accuse (a person) of an offense," and further that there is no language in the treaty limiting such an accusation to a formal charge.  [T.C. Order at 22 (quoting Black's Law Dictionary (12th ed. 2024)].  Moreover, he pointed out that there is no requirement that any charging documents be filed with extradition requests, which suggested to him that a formal, documented charge was not required.  [Id. at 23]

Additional considerations supported the Magistrate Judge's decision.  For one, in many extradition cases with similar language at issue, courts have not found a formal charging requirement.  [T.C. Order at 25–26 (collecting cases)].  The Magistrate Judge also cited two "extradition principles" supporting this analysis: first, that courts cannot

---

this Court does have "discretion to . . . address the merits of [that] substantive issue," [id.], it will not exercise any such discretion here—if it exists—and Petitioner may go through the usual process.

impose additional obligations on foreign governments, and second, that domestic courts should not need to become familiar with formal charging processes in other jurisdictions to effectuate extradition.  [Id. at 27].

> 2.  Analysis

Because interpreting the Treaty to determine whether there are "charges" in this case is a mixed question of law and fact, this Court reviews the Magistrate Judge's decision de novo.  Ahmad, 726 F. Supp. at 408.

The Court here comes to the same conclusion as did the Magistrate Judge.  As the Magistrate Judge correctly noted, many United States courts that have evaluated this issue under a myriad of treaties have found that the use of the term "charged" in a treaty, when unaccompanied by the requirement that a formal charging document be included in the extradition packet, does not require formal charges in the way the United States justice system conceptualizes them.  See Kaiser v. Rutherford, 827 F. Supp. 832, 834 (D.D.C. 1993) ("[E]very court that has addressed this issue has concluded that a formal charging document is not required under the Treaty."); see also, e.g., Emami v. U.S. Dist. Ct., 834 F.2d 1444, 1448 (9th Cir. 1987) (finding formal charge not required under extradition treaty with Germany where treaty "limit[ed its] application . . . to persons 'who have been charged with an offense'"); Matter of Assarsson, 635 F.2d 1237, 1241–42 (7th Cir. 1980) (finding formal "charge" under Swedish criminal code not required for extradition when treaty language included extradition for "person[s] charged with or convicted of" listed offenses); Al-Nouri v. Blinken, No. 22-cv-00633, 2024 WL 4436612, at *9 (D. Ariz. Oct. 7, 2024) (same for treaty with Iraq); Manrique v. O'Keefe, No. 21-cv-08395, 2022 WL 2116832, at *4 (N.D. Cal. June 13, 2022) (same for treaty with Peru);.

Indeed, the First Circuit has seemingly endorsed this result. In <u>Aguasvivas v. Pompeo</u>, the First Circuit found that a warrant alone was insufficient specifically where a "document setting forth the charges" was a specific requirement for extradition listed separately from "a copy of the warrant or order of arrest or detention." 984 F.3d 1047, 1055 (1st Cir. 2021). The court, however, "readily agree[d]" with the <u>Emami</u> and <u>Assarsson</u> courts that if "the treaty's list of required documents contained no reference to any formal document evidencing charges being brought," a more expansive reading of the term "charged" applies. <u>Id.</u> at 1060. Importantly, the court rejected the government's contention that a mandate for a warrant could do "double duty," serving as both the warrant and as a charging document, because it read the treaty as explicitly requiring two separate documents. <u>Id.</u> at 1059. The other side of that coin is that this Court cannot read the Treaty here to require a charging document where it only asks for an arrest warrant.

Petitioner's attempts to distinguish these cases, [T.C. ECF No. 22 at 8–10], are unavailing. His ultimate premise is that none of these cases involved a situation where "the sole intent expressed by the [requesting country] in its extradition request and accompanying arrest warrant is to investigate." [<u>Id.</u> at 10]. But, as the government notes, the factual record of this case does not support a reading that that is the case here, either. [T.C. ECF No. 27 at 13–14]. The arrest warrant issued by the Turkish judge noted "'the existence of strong suspicion' that T.C. 'committed the offence.'" [T.C. Order at 11 (quoting the Turkish judge's arrest warrant)]. There is simply no requirement that "the Turkish government . . . obtain[] a formal charge []or supplement[] its submissions to indicate a clear and unambiguous intent to prosecute T.C." [T.C. ECF No. 22 at 10].

## V.    CONCLUSION

For the reasons above, the Court orders that Petitioner Tok's petition is

**<u>TRANSFERRED</u>** to the United States District Court for the District of Rhode Island and

**<u>DENIES</u>** T.C.'s petition.

**SO ORDERED.**

August 1, 2025                                                    */s/ Allison D. Burroughs*
                                                                   ALLISON D. BURROUGHS
                                                                   U.S. DISTRICT JUDGE