# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| EYLEM TOK, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-cv-371-MRD-PAS |
| | ) | |
| MICHAEL NESSIGNER, Warden, | ) | |
|     Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

Petitioner Eylem Tok is fighting extradition to Türkiye after she and her son fled the country just hours after he was involved in a fatal car accident in Istanbul on March 1, 2024. Tok's extradition was certified to the Secretary of State by Chief Magistrate Judge Donald L. Cabell of the District of Massachusetts on February 11, 2025 when he issued an Order on Relator's Extradition, Motion to Dismiss, and Motion for Release from Custody. Aggrieved by the Magistrate Judge's Order, Tok filed a Petition for Writ of Habeas Corpus which requires this Court to examine many of the same arguments that the Magistrate Judge rejected. After reviewing the February 11, 2025 Order, the relevant Treaty and case law, as well as the parties' arguments, the Court DENIES Petitioner Tok's writ of habeas corpus for the reasons below.

## I.    BACKGROUND

*Factual Background*

Unless otherwise noted, the following information comes from the factual findings in the Magistrate Judge's February 11, 2025 Order in *Matter of Extradition of Tok*, 765 F. Supp. 3d 46, 54–57 (D. Mass. 2025). *See In re Extradition of Howard*, 996 F.2d 1320, 1329 & n.4 (1st Cir. 1993) (explaining that the Court must accept the Magistrate Judge's findings of fact unless clearly erroneous).

This case stems from a tragic car crash in Istanbul, Türkiye on March 1, 2024 involving Tok's son, T.C., who drove of one of the vehicles involved in the crash. *Matter of Extradition of Tok*, 765 F. Supp. 3d at 54–55. T.C. had three passengers in his car and was being followed by a friend who was carrying five passengers, when he accelerated at a high rate of speed around a curve and crashed into five individuals who were stopped on the side of the road after one of their ATV vehicles broke down. *Id.* at 54. All five ATV riders were brought to the hospital, and one later died from their injuries. *Id.* While still on scene, one of the injured passengers in T.C.'s car gave his cell phone to another passenger to utilize the flashlight feature in order to illuminate the injured party's head. *Id.* at 55. After doing so, the passenger absentmindedly pocketed the injured party's phone, took the keys from one of the vehicles, and drove from the crash site to a nearby housing complex. *Id.*

Immediately after the crash, T.C. called his mother—Eylem Tok—and his driver.[1]  *Id.*  His mom responded to the crash scene and transported her son and two occupants of the crashed cars away from the scene to their homes at the same housing complex.  *Id.*  Congregating at the complex was Tok, her son, the passenger who had the cell phone, others from the crash scene, security officers, and T.C.'s driver.  *Id.*  While there are conflicting accounts about what exactly happened to the cell phone that night, it is undisputed that T.C.'s driver found the cell phone in his vehicle a few days later and turned it into police after consulting with T.C.'s father's attorney.  *Id.* at 56–57.  Meanwhile, approximately 3 hours after the crash, Tok and her son boarded a one-way flight to Cairo and then to the United States.  *Id.* at 57.

Turkish officials obtained "arrest warrants" for Tok for allegedly violating Turkish Criminal Code Article 281, "destroying, concealing, or altering evidence," and Article 283 for "protecting the offender."[2]  *Id.* at 53.  The two were arrested on June 14, 2024 in Boston, Massachusetts on warrants that sought their extradition to Türkiye.  *Id.*  Petitioner has been detained since that date.

---

[1] The Court accepts that it was T.C.'s driver, but notes for the reader that "the extradition file as a whole presents [the driver's] agency as a disputed matter."  *Id.* at 60.  As a spoiler, the Court agrees that "the agency status of [the driver] is a matter for trial in Türkiye."  *Id.*

[2] The Court will later address Petitioner's argument that these documents are not "arrest warrants" as understood in the American criminal legal system and are documents that merely state Petitioner is wanted for questioning, not prosecution, for the Article 281 and 283 offenses.

*Procedural Background*

After their arrests on June 14, 2024, Petitioner Tok and her son appeared before Chief Magistrate Judge Donald L. Cabell of the District of Massachusetts who ordered both be detained while their extradition requests were pending. *Id.* The Court heard argument on October 16, 2024, and issued an Order on February 11, 2025 certifying Tok's extradition to the Secretary of State. That Order was stayed to allow Petitioner Tok to pursue habeas relief. On March 19, 2025, Tok filed a Petition for Writ of Habeas Corpus in the District of Massachusetts. In an Order issued on August 1, 2025, District Judge Allison D. Burroughs transferred Petitioner Tok's Petition for Writ of Habeas Corpus to this Court because Petitioner is currently detained at the Wyatt Detention Facility in Central Falls, Rhode Island. *Tok v. Kyes*, C.A. No. 25-cv-10649, 24-cv-12458, 2025 WL 2200412, at *4 (D. Mass Aug. 1, 2025).

## II.    LEGAL STANDARD

"[A] district judge may review a magistrate judge's extradition decision only on a petition for writ of habeas corpus." *Tok v. Kyes*, 2025 WL 2200412, at *3 (citing *Collins v. Miller*, 252 U.S. 364, 369–70 (1920)). "Ordinarily, 'habeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty, and . . . whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.'" *Hilton v. Kerry*, 754 F.3d 79, 86 (1st Cir. 2014) (quoting *Koskotas v. Roche*, 931 F.2d 169, 171 (1st Cir. 1991)). This review "is not a means for rehearing what the magistrate already decided." *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925). As the First

Circuit has observed, "serious due process concerns may merit review beyond the narrow scope of inquiry in extradition proceedings." *In re Extradition of Manzi,* 888 F.2d 204, 206 (1st Cir. 1989).

## III.    DISCUSSION[3]

### A.    Whether the Offense(s) Charged Are Within the Treaty

The Petitioner's writ of habeas corpus raises several issues for this Court to consider, many of which were already addressed and rejected by Magistrate Judge Cabell.   The arguments, in sum, are that the requirements of the Treaty on Extradition and Mutual Assistance in Criminal Matters Between the United States of America and the Republic of Türkiye, U.S.-Turk., June 7, 1979, 32 U.S.T. 3111 (the "Treaty")[4] have not been met for the reasons below: 1) "[Petitioner] has not been charged with an offense under the meaning of the Treaty," 2) Türkiye has not provided valid arrest warrants, 3) Petitioner cannot be jailed for more than 1 year on either the Article 281 or 283 charge, 4) dual criminality is not met, 5) the allegations relied on by the Government would not violate Turkish law, and 6) Petitioner's arrest and continued detention violates her rights under the Fourth and Fifth Amendments to the U.S. Constitution.   ECF No. 29-1 at 1–2.   The Government argues that the

---

[3] The Court can quickly dispense with the question of whether the Magistrate Judge had jurisdiction to hear the extradition case because "[t]he parties agree[d], and the court so [found], that the court ha[d] authority over th[e] extradition dispute." *Matter of Extradition of Tok,* 765 F. Supp. 3d at 58.   Further, neither Petitioner Tok's nor the Government's papers raise any objection about the Magistrate Judge's jurisdiction to hear the extradition case.   Thus, the Court finds that Chief Magistrate Judge Cabell properly exercised jurisdiction over Petitioner's extradition case and will move on to address Petitioner's arguments.

[4] https://perma.cc/LJ5R-HKCS

Magistrate Judge was correct in finding the following: 1) the Court had authority to conduct the extradition proceeding, 2) the Court had jurisdiction over Tok because she was arrested in Massachusetts, 3) the Treaty was in full force and effect, 4) the Article 281 and 283 charges — "destroying, concealing, or altering evidence" and "protecting an offender," respectively—were covered by the Treaty, and that there was probable cause to believe Petitioner committed the offenses.  ECF No. 30 at 7.  In reaching these findings, the Magistrate Judge rejected Petitioner's arguments on both the length of punishment allowed under Articles 281 and 283 and her not being formally charged with an offense that would render her extraditable.  This Court will now consider the parties' arguments, and the Magistrate Judge's analysis and conclusions set forth in *Matter of Extradition of Tok*, 765 F. Supp. 3d at 46.

### 1.   Petitioner Has Not Been "Charged"

The Treaty authorizes, in relevant part, extradition of persons "who are being prosecuted for or have been charged with an offense."  Treaty Art. 1(1).  The Petitioner asserts that the documents submitted in support of the extradition request establish that no prosecution has been initiated and that she has not been indicted or formally charged, as those terms are understood in the American criminal legal system.  ECF No. 29-1 at 7–8.  The Government responds that "[t]here is no reference to formal charges or indictment" in the Treaty, and that if formal charges were required, "there would be no need for Article 1 to expressly cover both individuals 'who are being prosecuted' *and* 'who have been charged.'"  ECF No. 30 at 10 (emphasis in original).  These are largely the same arguments the Magistrate Judge considered and rejected

in his February 11, 2025 Order certifying extradition to Türkiye. *See Matter of Extradition of Tok*, 765 F. Supp. 3d at 64–67 (explaining "the court finds that Tok has 'been charged with an offense' anent articles 281 and 283").

Petitioner's assertion that she cannot be extradited since she has not been formally charged/indicted or that no prosecution has been initiated is based, in part, on the "arrest warrant" indicating she is a "suspect" who is wanted for interrogation. ECF No. 30-3 at 53–54. In rejecting this argument and concluding that Petitioner "has been charged with and/or is being prosecuted for a criminal offense within the meaning of the Treaty," the Magistrate Judge examined the plain language of the Treaty and found that "no language qualifies or restricts the Article 1 phrase 'have been charged with an offense' to '*formally* charged with an offense,' such as indicted, charged in a criminal complaint, or the like." *Matter of Extradition of Tok*, 765 F. Supp. 3d at 65, 67. This Court agrees, and finds it persuasive that the United States and Türkiye did not require that the fugitive be "formally charged." Further, Article 7 of the Treaty, which lists the documents that must accompany extradition requests, omits the requirement of a formal charging document. *Id.* at 65. This approach is supported by caselaw from other circuits as well. *See Emami v. U.S. Dist. Ct.*, 834 F.2d 1444, 1449 (9th Cir. 1987) (rejecting Petitioner's argument that Germany had not committed to prosecuting him, but simply requested his extradition for "detention for investigation"); *Matter of Assarson*, 635 F.2d 1237 (7th Cir. 1980), *cert. denied* 451 U.S. 938 (1981) (finding the U.S.-Sweden Extradition Treaty did not require formal charges or a formal charging document in support of the extradition request);

7

*cf. Vitkus v. Blinken*, 79 F.4th 352, 363, 366 (4th Cir. 2023) (analyzing a treaty that required "*the* charging document" instead of "*a* charging document") (emphasis in original); *Aguasvivas v. Pompeo*, 984 F.3d 1047, 1060 (1st Cir. 2021) (explaining that the First Circuit "readily agrees with the holdings and the rationale in both *Emami and Assarsson*" and finding that a treaty required a specific charging document).

Rather than being extradited to face charges, Tok contends that the paperwork submitted in support of her extradition establishes that she is wanted so her statement can be taken, thereby triggering Chapter II of the Treaty entitled "Mutual Assistance in Criminal Matters." ECF No. 29-1 at 12. The Mutual Assistance provision of the Treaty states that "(3) [m]utual assistance shall include: (a) [e]xecution of requests related to criminal matters; (b) [e]ffecting the taking of testimony or statements of persons." Treaty, Ch. 2, Sec. 1, Art. 21. In arguing that Türkiye's request should have been made under the Mutual Assistance provision of the Treaty, Petitioner Tok suggests that "[t]o conclude that any accused person whose statement is 'charged with an offense' under Chapter I would be to render the portions of Chapter II dedicated to Mutual Assistance for effecting the taking of statements surplusage and redundant." ECF No. 29-1 at 12. The Government responds that it is inapposite that the Treaty combines sections on Extradition and Mutual Assistance and argues that "Türkiye is not seeking Tok's extradition solely to take her testimony; it is seeking to prosecute her for the Articles 281 and 283 offenses." ECF No. 30 at 15–16.

The problem for Petitioner is that the record is replete with indications that "Türkiye has unequivocally confirmed its intent to prosecute Tok." ECF No. 30 at 15. On this point, the Magistrate Judge stated:

> Tok also maintains that she is simply being investigated and that the Turkish documents in the extradition file only refer to an intent to investigate. The record belies this assertion and establishes unambiguously that Turkish officials view Tok as a suspect. The arrest warrant for the article 281 offense identifies Tok as a "*suspect*" who "has been ordered" to be "apprehended." Further, the accompanying decision states that, "An arrest warrant *shall* be issued against the *suspected* . . . More, Türkiye's official statement leaves no doubt where it states that, "[i]t is certain that she committed the offence[] of concealing, altering and destroying the evidence . . . In sum, the record establishes that Tok has been charged with and/or is being prosecuted for a criminal offense within the meaning of the treaty.

*Matter of Extradition of Tok*, 765 F. Supp. 3d at 67 (internal citations omitted). While the Magistrate Judge was not specifically addressing the Petitioner's Mutual Assistance argument, the quoted language makes clear, as the Government argues, that "Türkiye is not seeking Tok's extradition solely to take her testimony; it is seeking to prosecute her for the Articles 281 and 283 offenses." ECF No. 30 at 16.

This Court concludes that the Petitioner has been "charged" under the Treaty, and further that Türkiye is not required to pursue Tok's statement via the Mutual Assistance provision of the Treaty.

## 2. No "Arrest Warrant"

Now that the Court has concluded that the Petitioner has been "charged" or "is being prosecuted," it moves on to address her next argument that Türkiye has not submitted arrest warrants that meet the Treaty's requirements for extradition. ECF No. 29-1 at 15. Article 7 states that "[a] request relating to a person being prosecuted

9

or who is charged with an offense . . . shall be accompanied by . . . [a] warrant of arrest issued by a judge or other competent judicial officer."  Treaty Art. 7(1)(a). While Petitioner is right that "[t]he Magistrate Judge did not substantively address Ms. Tok's arguments that the documents submitted are not, in fact, arrest warrants," ECF No. 29-1 at 15–16 n.11, this Court concludes that Petitioner's argument lacks merit.

First, both warrants were issued by judges—one from the 7th Criminal Judgeship of Peace and one from the 10th Criminal Judgeship of the Peace—and signed by clerks of each court.  ECF No. 30-3 at 51–56.  Next, both arrest warrants identify Tok as a "suspect" and allege that she has committed the Articles 281 and 283 offenses.  *Id.*  Further, the Government argues that "[t]he very nature of an arrest warrant is to provide authorization for law enforcement to arrest and detain a person, and there is no reason to believe Türkiye would not seek to bring Tok into custody based on the outstanding warrants."  ECF No. 30 at 17–18.  The content of the arrest warrants seeks exactly that, to arrest and detain Tok.

While the Court acknowledges that the two arrest warrants differ in some respects, the differences do not materially alter the purpose of each document, which is clearly to arrest and detain Tok for suspicion of violating Articles 281 and 283.  For example, the Petitioner argues that "[u]nlike the Article 283 document, the Article 281 document does not instruct apprehending authorities to immediately *bring* the suspect to the prosecutor's office, but instead instructs authorities merely to *contact* the prosecutor's office."  ECF No. 29-1 at 17.  This minor difference in wording does

not negate that the document is called an arrest warrant, refers to the suspect being captured, and lists the "imputed offence" and "statutory basis" for the arrest warrant. Most importantly, however, both documents contain an indication that the investigation file was reviewed by each judge before each determined that the Petitioner should be arrested and detained.[5]  ECF No. 30-3 at 51, 54.

This Court is not willing to "second-guess" Türkiye's determination of what constitutes a valid arrest warrant. *See Basic v. Steck*, 819 F.3d 897, 901 (6th Cir. 2016).  Indeed, if the two documents were plainly lacking the necessary requirements of a typical arrest warrant this Court could intervene, but this situation is far from that.  The purpose of these two documents is clear: to arrest and detain Petitioner Tok, the exact purpose of an arrest warrant.  The two arrest warrants Türkiye obtained and submitted as part of its extradition packet contain sufficient information to lead this Court to conclude that the Article 7 arrest warrant requirement has been satisfied.

### 3. Charges Carry Punishment Greater Than 1 Year

One requirement for extradition under the Treaty is that the extraditable offense be punished "by deprivation of liberty at least for a period exceeding one year or by a more severe penalty."  Treaty Art. 2(1).  Petitioner argues that this requirement is not met because neither the Article 281 charge nor the Article 283 charge carry a deprivation of liberty for one year or more.  ECF No. 29-1 at 21–24.

---

[5] The Court also notes that the first warrant was obtained on March 6, 2024 and the second on March 13, 2024 which could also lead to the minor discrepancies highlighted by the Petitioner.  ECF No. 30-3 at 52, 56.

As it relates to the Article 283 charge, Petitioner suggests that she cannot be prosecuted at all under that statute since she is exempted as the "direct ancestor or descendant of an alleged offender." *Id.* at 21. The argument that the Petitioner is not facing more than one year on the Article 283 charge stems from a provision in the Turkish Criminal Code that states "[w]here a person submits evidence of an offence, which had been concealed by him, before judgment is passed regarding such offence, the penalty to be imposed according to this Article *shall* be reduced by four-fifths." *Id.* at 23 (quoting Article 281(3)) (emphasis in original). According to Petitioner, the fact that T.C.'s driver turned the phone into local authorities triggers this provision and reduces the maximum punishment range from 6 months–5 years to 1.8 months– 1 year.[6] *Id.* at 23–24.

While the Court did not analyze whether the Article 283 offense satisfies the Treaty requirement, it thoughtfully considered and rejected Petitioner's argument on the Article 281 charge. *Matter of Extradition of Tok*, 765 F. Supp. 3d at 58–60. In rejecting Petitioner's argument, the Magistrate Judge focused on the "competing version of the facts" which fail to conclusively establish that the reduction applies. *Id.* at 59–60. The fact dispute centers on whether T.C.'s driver was acting as Tok's agent when returning the phone to police, or whether he was acting on the legal advice from T.C.'s father's attorney. *Id.* at 60. This Court agrees with the Magistrate

---

[6] The Court notes that Petitioner's Counsel and the Magistrate Judge assert the punishment would be "4.8 months to one year" if this Article 281(3) reduction applies, but this Court believes the correct downward adjustment would lead to a range of 1.2 months–1 year. *Matter of Extradition of Tok*, 765 F. Supp. 3d at 59; ECF No. 29-1 at 24.

Judge that "the agency status of [the driver] is a matter for trial in Türkiye" and because of that "Tok would be punishable under Article 281(1) for a period exceeding one year, namely, up to five years if it is determined at trial that [the driver] was not acting as [Tok's] agent when he turned the phone into police." *Id.*

The Magistrate Judge did not analyze whether Article 283 met this Treaty requirement because the Court found that "[the Treaty] provides that if one offense is extraditable, the other offense is extraditable even if it does not satisfy the above-quoted deprivation of liberty requirements." *Id.* at 58 (citing Treaty, Art. 2(4)).[7] The Petitioner's argument that she cannot be punished for the Article 283 offense—protecting an offender—appears convincing, but this Court adopts the approach of the Magistrate Judge and declines to fully analyze this point because the punishment requirement is satisfied as it relates to the Article 281 charge. Since the Treaty allows for extradition on both offenses so long as one satisfies the punishment requirement, this Court concludes that Article 2 of the Treaty has been satisfied.

### 4. Dual Criminality

Dual criminality exists if the particular act charged is criminal in both jurisdictions—here, the United States and Türkiye. *Collins v. Loisel*, 259 U.S. 309, 312 (1922). Tok contends that the facts leading to the Article 281 charge do not satisfy

---

[7] Treaty, Sec. I., Art. 2(4) states in full: "When a request for extradition comprises several separate offenses and extradition has been granted for one of the extraditable offenses, it shall also be granted for other extraditable offenses which could not otherwise fulfill the requirements of paragraphs (1) and (2) above as related to the deprivation of liberty to be served or duration of the penalty to be enforced in the Requesting Party."

the dual criminality requirements.    ECF No. 29-1 at 24–25.    In finding dual criminality for the Article 281 charge, the Magistrate Judge explained the following:

> [I]n taking the cellphone, she prevent[ed] the law enforcement officers and the judicial officers from intervening effectively and quickly in the incident. Türkiye's official response adds that this is sufficient for the trial of TOK under the Article 281 offense… As set out in the preceding paragraph and the more fulsome factual background, her actions concealed evidence of [T.C.'s] offense to prevent the truth from emerging.    The Turkish prosecutor's report and Türkiye's official response reflect that Tok lied to and misled the security guards that she knew the owner of the cellphone. She then took the cellphone, which Türkiye considered evidence, and concealed it.

*Matter of Extradition of Tok*, 765 F. Supp. 3d at 62. (cleaned up).  The Court explained that the same conduct could violate 18 U.S.C. § 1512 which deals with tampering with a witness, victim, or informant.  The purpose of that statute is "to facilitate federal law enforcement's ability to gather information about possible federal crimes—including federal crimes that are not yet under investigation at the time of the offense."  *United States v. Bailey*, 405 F.3d 102, 108 (1st Cir. 2005).  Simply put, Tok prevented investigators from accessing certain information to facilitate the investigation into the crash.  This conduct satisfies the dual criminality requirement of the Treaty.

Tok's Amended Habeas Petition does not challenge the Magistrate Judge's finding that dual criminality exists for the Article 283 charge.  Because this review "is not a means for rehearing what the magistrate already decided," *Fernandez*, 268 U.S. at 312, the Court will not take up this analysis on its own accord.  Instead, the Court concurs with the Magistrate Judge's determination that dual criminality exists.

### 5.  Fourth and Fifth Amendment[8]

Next, Petitioner argues that her arrest violated the Fourth Amendment and 18 U.S.C. § 3184, and that her continued detention violates her Fifth Amendment due process rights.  ECF No. 29-1 at 19.  She argues that she was "arrested based on a representation that she was extraditable for a violation of Turkish Criminal Code Article 283, and an arrest warrant was issued based on that complaint."  *Id.*  The problem, she asserts, is that critical information was omitted from the extradition packet.  Specifically, Tok argues that the judicial officer who signed the arrest warrant was not provided with the entire text of Article 283 which includes a provision stating that the direct ancestor or descendant of an alleged offender cannot be punished under Turkish law for protecting an offender.  *Id.* at 19–21.

On this issue, the Magistrate Judge simply stated that "Tok's [] argument fails summarily" because Türkiye supplemented the original Complaint with the entire law.  *Matter of Extradition of Tok*, 765 F. Supp. 3d at 54 n.7.  But this Court is not constrained to the Magistrate Judge's analysis since the existence of probable cause is a question of law, requiring the Court to apply a de novo standard of review.  *See In re Extradition of Howard*, 996 F.2d 1320, 1329 (1st Cir. 1993) (explaining "[t]reaty interpretation is a purely legal exercise as to which … no deference is due to the trier").

---

[8] On November 19, 2025, this Court issued a Text Order providing the Parties with an opportunity to submit additional briefing on the Fourth and Fifth Amendment issues.  The Court has received and considered the supplemental briefings submitted in ECF Nos. 37, 38.

The Treaty expressly outlines that a request to extradite "*shall* be accompanied by … (e) [t]he text of the applicable laws of [Türkiye], including the law defining the offense, the law prescribing the punishment for the offense, and the law relating to the limitation of legal proceedings or the enforcement of the penalty for the offense." Treaty, Sec. II., Art. 7(1)(e) (emphasis added); *see Abbott v. Abbott*, 560 U.S. 1, 10 (2010) (quoting *Medellin v. Texas*, 552 U.S. 491, 506 (2009) ("[t]he interpretation of a treaty, like the interpretation of a statute, begins with its text.")).    Read in conjunction with 18 U.S.C. § 3184, which permits extradition if evidence is deemed "sufficient to sustain the charge under the provisions of the Treaty," the Complaint submitted to the Magistrate Judge in Florida should have contained the full text of the law, including the penalty and limitation.[9]  Rather than submit the full text of Article 283, the Government omitted highly relevant portions of the law, specifically the exception limiting punishment for direct ancestors or descendants of an alleged offender.  This omission—intentional or not—is troubling because it is the exact language that could have casted doubt on the existence of probable cause to issue an arrest warrant.

The Government argues that this is a non-issue because an Amended Complaint including the omitted language and the Article 281 charge was filed on July 1, 2024, albeit after Petitioner's arrest on June 14, 2024.  ECF No. 30 at 27–28; ECF No. 37 at 8–11.  This contention misses the mark because Petitioner was

---

[9] The Government presented the extradition packet and request for a warrant to a magistrate judge in Florida, but the Petitioner and her son were arrested in Massachusetts.

arrested and deprived of her liberty on June 14, 2024, before the omissions were corrected. The more precise concern is whether, given the omitted language, probable cause existed to support the issuance of the May 7 Arrest Warrant (ECF No. 30-6). *See* U.S. CONST. amend. IV ("no Warrants shall issue, but upon probable cause"); *see also Burke v. Town of Walpole*, 405 F.3d 66, 81–82 (1st Cir. 2005) (explaining that material errors or omissions from warrant applications may violate the Fourth Amendment).[10] Meanwhile, Petitioner urges the Court to dismiss the extradition complaint based on the reasoning of *In re Extradition of Ferriolo*, 126 F. Supp. 3d 1297 (M.D. Fla. 2015) and *In re Extradition of Molnar*, 202 F. Supp. 2d 782 (N.D. Ill. 2002). ECF No. 38 at 4.

In *Ferriolo*, an extradition complaint was dismissed after the government failed to include English translations of the law, in violation of the treaty. 126 F. Supp. 3d at 1304. In its discussion on why dismissal was proper, the court explained that, "[w]ithout English translation copies of certain of the statutes Ferriolo allegedly violated, the Court cannot determine whether there is probable cause to believe the elements of those crimes has been shown … [and] a finding of no probable cause is compelled." *Id.* In *Molnar*, the Republic of Hungary failed to submit documentation that sufficiently described the "elements of the offense." 202 F. Supp. 2d at 787. The

---

[10] The Government's supplemental filing cites to cases that stand for the proposition that the relevant inquiry is "the facts known to the officer at the time of arrest." ECF No. 37 at 5 (citing *Velez v. Euty*, 152 F.4th 292 (1st Cir. 2025); *Karamangolu v. Town of Yarmouth*, 15 F.4th 82 (1st Cir. 2021)). These cases are not on point with these facts because they involve law enforcement making warrantless arrests, not whether probable cause existed to support the issuance of an arrest warrant.

court explained that it found no probable cause on other grounds, "but had [it] not, the deficiencies in the documentation would give [the court] pause to allow extradition in any event." *Id.* at 788.

What distinguishes Tok's situation from what the courts in *Ferriolo* and *Molnar* confronted is that here the omission has been rectified. So now this Court is confronted with a tug-of-war: on one side is a Complaint that likely fails to comply with Article 7(1)(e) of the Treaty and on the other is an Amended Complaint that satisfies that very omission. This is all complicated by the fact that Petitioner was arrested on June 14, 2014 and the Amended Complaint was filed over two weeks later.

While the Petitioner is correct that she may not be *punishable* for violating Article 283 based on the exception for direct ancestor or descendants of an alleged offender, the Court cannot look past Türkiye's assertion that "[a]ccording to Turkish law, Eylem Tok's status as a mother must be established and certified before the court; and even if it is proven in the investigation that she is a mother, there is no obstacle to the imposition of security measures." ECF No. 30-4 at 22. Further, when asked if a direct ancestor or descendant could be punished for violating Article 283, Professor Türay—Associate Professor, Özyeğin University Faculty of Law, Criminal, and Criminal Procedure Law, Faculty Member—stated that "a criminal case may be filed against the person, but even if a lawsuit is filed, it is not possible for the person to be convicted and therefore punished as a result of this trial." ECF No. 21-5 at 8 (Türay Decl. at 4(e)). This Court will not speculate as to why the charge would be

brought if the person cannot be convicted or punished, but, notably, the Türay Declaration does not indicate that a person *cannot be charged* under these circumstances.

Further, Article 8 of the Treaty permits a requesting party to request additional information, even if the person is in custody. It states that, even if the person is discharged from custody, "such discharge shall not prevent a subsequent request for extradition for the same offense." Treaty Sec. II, Art. 8(2). This, and the fact that neither the Government of Türkiye (through their statement at ECF No. 30-4 at 22) nor Professor Türay foreclose the possibility that a person in this situation could still be charged, leads the Court to conclude that Türkiye's original extradition request, corrected by an Amended Complaint, complied with the Fourth Amendment. Similarly, since her original detention was supported by probable cause, as determined by a Magistrate Judge, her continued detention does not violate the Fifth Amendment.

### 6.    Did Actions Violate Turkish law

Petitioner argues that her actions do not violate Turkish Criminal Code Article 281, "destroying, concealing, or altering evidence," because the cell phone is not evidentiary. ECF No. 29-1 at 32. In support of this argument, Petitioner relies on the declaration of Professor Türay who suggests Article 281 does not apply to items that are not considered evidence. ECF No. 21-5 ¶ 4(d). The Government asks the Court to reject this argument because it requires interpreting Turkish law which is inappropriate. ECF No. 30 at 25–26. In agreeing with the Government, the

Magistrate Judge relied on Türkiye's official response that it does consider the cell phone evidence. *Matter of Extradition of Tok*, 765 F. Supp. 3d at 60–61. Türkiye's official response explains, "it is clearly stated, within the scope of the investigation, that Eylem Tok took evidence, which may contain many photographs and videos of the accident scene." *Id.* at 56.

Because Professor Türay's declaration conflicts with Türkiye's position, the Court will adopt the same approach as the Magistrate Judge and defer to Türkiye's interpretation of the law. *See id.*; *Koskotas v. Roche*, 931 F.2d 169, 175 (1991) (stating that "contradictory evidence properly may be excluded"); *Matter of Extradition of Taylor*, 484 F. Supp. 3d 13, 18 (D. Mass. 2020) (deferring to foreign government's reasonable interpretation of its own laws). The Petitioner's argument is rejected.[11]

## IV.    CONCLUSION

For these reasons, the Petitioner's Amended Petition for a Writ of Habeas Corpus is DENIED.

IT IS SO ORDERED.

Melissa R. DuBose
United States District Judge

01/14/2026

---

[11] While *Hilton* permits the Court to examine "whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty," 754 F.3d at 86, neither party contests this portion of the Magistrate Judge's decision. Therefore, the Court will forgo this analysis.